## STATE ex rel. CURRY, et al v. KELLY.

Circuit Court, Dade County. ·

December 16, 1954.

George A. Brautigam, state attorney, John D. Marsh, county solicitor, A. C. Dressler, assistant county solicitor, for respondent.

E. F. P. Brigham, Miami, for A. B. Curry.

Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for the engineer.

R. K. Bell, Miami, for the house movers.

CHARLES A. CARROLL, Circuit Judge.

The court will now proceed to determine these cases. The matter comes on to be heard on four different writs issued on the 10th of December. The writs disclose that the relators are charged together under an information with the crime of conspiracy to commit a larceny which involved a certain structure, according to the information, and its removal or disposition from property of the county under a contract between the county and certain movers, who were two of the defendants in that information, and two relators, the other two being the director of the port authority and the engineer.

I am very conscious of the matter of jurisdiction and the limits on the court in the exercise of jurisdiction as I stated when the matter was first heard. Since then there has been an amendment filed on the 13th, and by that amendment and also by an order of the court having jurisdiction of the cause, the contract is a part of the record before the court and can be considered, as I understand it now, as part of the information.

There has been a showing by amendment, which has been allowed, that there are circumstances and special conditions which not only justify but create a situation where it is the duty of the court to inquire into the nature of the information and to determine its effect and validity as to the relators.

Now, those special facts, to deal first with the second one which was urged, and that is the public interest in this matter. This grows out of an operation of the port authority. Unquestionably, I agree with the statement made by counsel, anything that affects the port authority is a matter of supreme public interest not only to this community, but throughout the country in view of the importance of that project. Under the well known case, I believe they have cited, of ex parte Powell [70 So. 2d 392] this has been recognized as a basis for habeas corpus by our own Supreme Court.

On the matter of the special circumstances or facts of this case which make it appropriate for a court on habeas corpus to inquire into the sufficiency of this information, it has been made

to appear that the announced policy of the court—in fact the presiding court of the two criminal courts which have jurisdiction of the misdemeanor which has been charged here—to defer action in this matter and other similar matters which may grow out of the operation of the port authority because of certain instructions given the grand jury suggesting an inquiry into matters of that port, which were commented upon by the judge of the criminal court, which established the policy just referred to, and which again points up the public importance of the matters relating to that port.

That may not seem like an important circumstance, but it so happens, under the authority cited, that falls within the expressed precedent for the action which this court holds it should take in this matter. A federal case was cited, In re Hacker, 73 Federal 464, [D.C. Cal.]. That case relied on the United States Supreme Court case of Ex parte Royall in volume 117, I believe, of United States Reports [page 241]. That case first stated the general proposition which was followed in the Barber case, 75 Federal 980 [D.C. Wis.]. The Barber case applied the principle which was definitely set in the Hacker case, and the facts of the Barber case almost exactly fit the situation here. I think that those cases have been sufficiently discussed in the argument, and there is no need to comment further on the facts except to say that based on the showing made here I find there are special circumstances which indicate that an earlier determination should be made on habeas corpus than could be expected to be had in the orderly or regular defense of the accused in the criminal court.

Turning to a consideration of the information, I repeat, as suggested just a moment ago by Mr. Dressler, the court is not at liberty to release relators on habeas corpus because of an improperly drawn information—that is, if by better drafting or addition of facts which are possible under the circumstances a sufficient complaint can be made out, then that is not a basis for their release. If it does not appear on examination of the information, on the other hand, if the facts of the case are such that there is no possibility of their statement which would constitute the crime charged or other crime, then the court is entitled to so recognize it and to determine that the information is defective to that extent, and cannot and does not state a crime under the law.

I find that the Florida Supreme Court in a number of cases has sanctioned that practice, and in view of those cases I am not sure that it is even necessary for the particular special facts, which the federal courts find necessary, to be present, because in the case of Watson v. Stone in 4 Southern 2d Series [page 700] and Kittle-

son v. State in 9 Southern 2d [page 807], and State v. Coleman in 25 Southern 2d [page 860], the Supreme Court has held that where an indictment or information fails to state any crime under the law and is not capable upon reasonable amendment to state such crime, the court on habeas corpus may so inquire and determine and rule, notwithstanding the ordinary procedure would be for a defense by motions and trial in the trial court having jurisdiction of the offense in question.

So I think that it is quite clear that this court may consider the arguments of counsel relating to the sufficiency of this information. On that it seems to me that it is not as complicated as perhaps as has been assumed in the arguments. In fact, to me it is quite simple. The nub of the whole matter is the question of who owned this property under the contract. I see nothing ambiguous in the contract, and certainly there is no evidence required to determine what the contract means.

Under these general conditions—paragraph 20, I believe, or 27 —providing for the removal and disposition of structures, such as the one which is involved here, it has the effect of conferring the property in that to the mover. Now, it doesn't necessarily do that, because there may be no property left, but it does have the effect of taking title away from the owner, which in this case would be the county or port authority, any ownership or right or control over that object.

There have been cited to me certain cases, I believe one from New York and one from Massachusetts, in which the courts have held definitely that a provision for removal by a contractor of materials such as sand and soil, in those two cases, resulted in that material becoming the property of the mover and no longer being owned by the owner of the structure or the land. There has been no other authority cited. That seems reasonable. It seems to me that if that's the rule with sand or soil, which would keep its form on being removed and which might be useable and might not be expected to be destroyed, it would be all the more so with a building, because if the mover is required to remove a building of that character, in the absence of any direction as to how he should do it, he certainly would be at liberty to do it his way, which could mean to splinter it or completely destroy it. If he could do that, he is entitled to possess it in any other manner.

In the absence in this contract of any reservation of title, any direction or information to control the future disposition or use of this building, it necessarily and obviously no longer was the property of the county upon its being removed or severed. It could not have any different effect. Other provisions of the con-

tract are not found to be inconsistent with that, but rather consistent. I see no ambiguity or reason to arrive at any different thought on that point.

I therefore find that under no statement of the facts here could this information be made to state a crime against the relators. Judgment is awarded in favor of the relators in each of these four cases, and it is ordered that they be discharged from custody.

A request having been made that the state be granted a right of appeal in the event of an adverse ruling, it is ordered that the state may appeal from this judgment, and this order shall also operate as a consolidation of the above-styled four cases.

The court reporter is requested to transcribe the statements just made by the court, styling it up suitable for filing, and submit it for signature by me, and it will then be entered as the opinion and order of the court in this cause.

Done and ordered in open court at Miami, Florida, this 16th day of December, 1954.